Appellant. Mr. Berman for the appellant. Mr. Hansberg for the appellate. Good morning, counsel. Mr. Berman, please proceed when you're ready. Good morning, Your Honor, and may it please the Court. I want to devote my time this morning to a pure sufficiency claim, namely the government's failure to prove beyond a reasonable doubt that the defendant, Rowena Joyce Scott, caused the death of her husband, Mr. Hansberg. It caused interstate wire communications to execute the charge scheme to defraud. The wire fraud charges in this case, counts one through three, alleged that on three occasions in early 2014, Ms. Scott withdrew cash at a Wells Fargo branch here in D.C., and that, quote, in processing the transactions, computers at the branch connected electronically with Wells Fargo computers and servers located outside of D.C. The government attempted to prove a connection to a server in Minnesota, but it did not do so. Interestingly, the government chose not to present a witness from Wells Fargo, and the evidence that it did present was so thin that it didn't allow the jury to even draw a permissible inference that Ms. Scott's withdrawals triggered interstate communications. The jury could only engage in what this Court has called, in a variety of cases on this subject, mere speculation or surmise and conjecture. Let's look at the evidence they did present. Appendix 2581 to 2590, they presented portions of bank statements and withdrawal slips, paper withdrawal slips, that Ms. Scott signed on three occasions. A lot of these withdrawal slips were for money taken off the books, you know, off the ledger, and then later on explained. Is that correct? Yes, Your Honor, and we're not challenging the government's proof on the first the fraud scheme. I'm limiting my argument to the second part, whether or not the government proved that she caused execution of the fraud scheme via interstate wire communications. And those paper withdrawal slips obviously do not on their face show or help prove in any way an interstate wire communication. The second thing the government offered was testimony from the IRS case agent, who obviously had no personal knowledge of the Wells Fargo system. And I would say here that the AUSA asked the wrong questions and as a result got inadequate answers. The agent testified she had investigated the Wells Fargo transactions and that she'd made determinations, but she didn't say what the investigation proved or what the determination was. In Appendix 1143, you investigate whether any of the bank transactions that we've been discussing with the Park Southern accounts involved the use of electronic communication. She says yes. Okay, so we've established that she investigated. Did you investigate whether any of those electronic communications went across state lines? Answer, yes. Again, all that that establishes is that she investigated. Appendix 1148. Can I just ask, I'm trying to just understand exactly which part of the elements of proof you're focusing on here. So suppose in that exchange the witness was directly asked, okay, then you investigated, you said you did, and did you find and then, depending on which question, take the second one. Can you read back the second one? Sure, the second one was did you investigate whether any of those electronic communications went across state lines? Yes. Okay, now suppose the interrogator, the lawyer, went a step further and said, okay, and then did you find that they did? And then she said yes. If that were true, and I know it isn't, but if that were true, is this argument you're making foreclosed? I think the government would be on much stronger footing if the answer had been that. And with that, let me proceed to the next question, because Appendix 748, the prosecutor asked Special Agent Reese, did you determine whether, not that, whether, this bank branch in Washington, D.C. communicated with a computer anywhere else in the country to process these withdrawals? The answer is yes. I submit that that's simply established that she made a determination, but not what the determination was. But isn't it also in the record that there was a business record from Wells Fargo showing the D.C. branch, that the server was located in Shoreview, Michigan, and that the settlement method was electronic, and I'm looking at J.A. 3605, which is the exhibit introduced in the testimony at J.A. 1150. It seems like that would be sufficient, together with the yes answer about the determination, to support the jury's finding that the withdrawals involved interstate communication. So what I say about that record is two things, Your Honor. First is that I think the court has to disregard the first three pages of that exhibit because that's merely a business record certification under Rule 902.11. For example, the part of that exhibit in which the government quotes from a letter from the Wells Fargo paralegal is not substantive evidence to prove the wiring. If it were, then we'd have a confrontation clause problem under Belendez-Diaz. But turning to that particular page, Your Honor, what we have is 14 columns here, ranging from type of item or transaction to Wells Fargo account number all the way across to the last column which says settlement monetary process and location. And the problem was that there was nobody, I think that the record on its face, I would submit, is not self-explanatory. The agent didn't really do any explaining. The agent simply said this column says this, this column says that, this column says the other, and I would submit that to draw a conclusion from this page that the withdrawal in D.C. caused a communication to Minnesota is surmise and speculation rather than an appropriate inference. Absent testimony, absent some explanation, again, this record, I would submit, is not self-explanatory. And in that regard, I think it's worth noting that the last heading all the way to the right where the heading says settlement monetary process and location column. And it indicates right in the heading that Wells Fargo's usual process is to provide specific information about an interstate wiring, for example, that it's from Texas to Minneapolis, or from Minneapolis to North Carolina, and yet this column here doesn't say any such thing. It simply says settled internally via customer's demand deposit account. I would submit that that answer, and I have larger copies of this exhibit, of this page, if the court would like them. This is the one, which page is it? 3605. 3605, yeah. And I can give the clerk larger copies if the court would like them afterwards. But what I would submit is that this column all the way to the right where it simply says settled internally via customer's demand deposit account, that really doesn't prove anything about whether or not this withdrawal caused a communication between D.C. and Minneapolis. Now the column next to that, I mean, using my magnifying glass to read it, the column next to that says electronic on it, right? It does say electronic, but to me that doesn't add up to establishing that this transaction caused an electronic communication from D.C. to Minneapolis. But the only question is, this is part of a sufficiency argument, right? So what we're looking at is whether any rational jury could have taken the accumulation of this exhibit and the testimony that didn't get, I take your point that it didn't get all the way to be brought home as definitively as it might have been, but the question is whether whatever implication they might have drawn from the exchange that was made, plus the documentary evidence, could lead a rational jury to conclude that the wire communication... Well, Your Honor, we've quoted from the Bethea case and the Carter cases, and there's a dozen others going back to the 1940s and as recently as a couple years ago, in which the court draws a line between mere speculation and surmise and conjecture on one side and appropriate inference on the other side. We would submit that all this evidence adds up only to mere speculation and conjecture, and with that I'll reserve the remainder of my time. Thank you. Well, just a quick question. Are you giving up on the statute of limitations? We'll give you a little bit of rebuttal. Yes, Your Honor. But are you giving up on the statute of limitations issue? We'll rest on what's in our reply brief. Thank you, Mr. Berman. Mr. Hansford. Good morning, and may it please the court. Eric Hansford for the United States. Sufficient evidence supports the defendant's various convictions in this case, and the district court correctly denied the suppression motions. I'll start following counsel's lead with the interstate nature of the wire communication in this case. It is a sufficiency challenge, meaning that we view the evidence in the light most favorable to the government, and there are three pockets of evidence that I want to point to here. There's the testimony, there's the chart in Exhibit 120, and then there is the cover letter. The cover letter is properly before this court in terms of a sufficiency challenge. It was admitted, this is at Appendix 956, it was admitted without objection, without any sort of limiting instructions, and in a sufficiency challenge, this court does consider all evidence that is admitted at trial, whether or not it was properly admitted or erroneously admitted. A couple of sites for that. Daniel V. Brown from the Supreme Court, 558 U.S. 120 at 130 to 131, and then this court's decision in United States v. Moore, 651 F3rd 30 at 84. And so I think the cover letter alone forecloses this challenge. The cover letter says these are the physical locations of the servers that process the transaction. That's at 951 you said? It's at A956 where, oh sorry, the cover letter is at A3602. Council did submit a couple weeks ago a minor copy of this exhibit to the clerk's office, so we can submit that again if the court does not have it because the copy in the appendix is a little bit unclear. But the cover letter is certainly legible here. And so the fact that the servers that process the transactions were located, we can see at A3605, the chart, in Minnesota, that establishes on its own an interstate wire transfer. And the confrontation type issues are not properly presented here. They were not objected to. There were not limitations on the admission below. Even if we were to set aside the cover letter, we do agree that in context, the full exchange between the special agent's testimony and the chart that's admitted as part of that testimony together viewing the evidence in the light most favorable to the government. Take Mr. Berman to be saying that if this is being admitted for the truth of the matter that's bolded in the letter, then there's a confrontation clause problem with letting that in without, I guess, defendant being able to cross-examine Mr. Lindquist? So I guess whether or not there's a confrontation issue with that, it is before this court in a sufficiency challenge. So for a sufficiency challenge, that doesn't matter whether there's a confrontation issue. Of course, the defendant didn't raise a confrontation objection below or on appeal. That's not coming out until the reply brief. But what this court and the Supreme Court have said is when you're looking at a sufficiency challenge, you look at all the evidence that is before the jury, whether it should have been admitted or not. Right. So, I mean, the way you do that conceptually is it's a historical fact about the world that this document was before the jury. Correct. It's a historical possibility based on this historical fact that the jury could have taken account of this. And when we're looking at it on appeal, we're not supposed to scrutinize whether there could have been an objection made that would have prevented that evidence from coming before the jury. Exactly. And there's good reason for that, which is that the government relies on the evidence that's admitted, even though it may always have alternative forms of evidence that it could otherwise submit. And so the government here admitted this evidence, you know, maybe should have asked another follow-up question. Had there been an objection to this evidence? Had this evidence been excluded? Those sorts of certainly everyone seems to acknowledge in terms of what is true in the world. There was an interstate wire transfer here. And so the government could have offered alternative proof of that or could have put on the custodian if necessary to establish that in this case. The government, because there was an objection below, because that fully came in, that was before the trial court and the government was permitted to rely on that in terms of establishing the interstate nature of the wire transfer. I think I interrupted you when you said you had three points you wanted to make and I gather this was one. Sure. Well, so and then I think the other is that the testimony, so even if we were setting aside the cover letter, the cover letter alone is sufficient, but even if we were setting aside the cover letter, we think the exhibit in conjunction with the testimony also would independently establish that. I do think on Appendix 1148, that exchange with the agent, the question is, Special Agent Reese, did you determine whether this bank branch in Washington, D.C. communicated with computers anywhere else in the country to process these withdrawals? The answer is yes. And you can understand that yes either as yes, I made that determination or as yes, it did. It's ambiguous, but viewing the evidence in the light most favorable to the government, a reasonable fact finder could infer that what the agent meant was yes, it did, especially in conjunction with the chart that's in Government Exhibit 120 that's admitted immediately after that where the agent walks through and in particular notes that the server was in Minnesota. I have a question about, if you're done with that. Sure. I have a question about the tax fraud. Of course. You argue that Scott's under-reporting of income in her 2013 tax return was willful because although she reported more income than her annual salary from Park Southern, she failed to report her illegal income from her embezzlement. And I guess my question is, is the under-reporting actually properly characterized as willful if this defendant honestly believed that there was no legal obligation to report illegally gained income? I mean, there's something kind of counterintuitive about that unless you followed the fate of Al Capone and others. Sure. So I think there's a cleaner way to address the 2013 income, which is that this is again a sufficiency challenge. So her permissible annual salary was $60,000 in that year. She reported slightly over that, I think $61,897. But this is on 34 to 35 in our brief and that has the appendix sites. In fact, just the direct deposits and the checks that were written out to her totaled $68,000. So in other words, even though her stated annual salary was $60,000, just the clear payroll transactions were $68,000. And then beyond that the total earnings were $83,000. But this was an issue that was fully aired before the jury. There's no challenge to the jury instructions as to willfulness. And so this is, I think, completely a permissible jury argument that she wasn't acting willfully. She made an honest mistake. She did testify. But in this case, the jury was also permitted to not credit that testimony and instead to find her actions to be willful. I'm not sure that I'm following how the $68,000, $61,897, $83,000, how that goes to the willfulness point. She reported to the IRS approximately $62,000 in earnings. Even if you are not looking at credit card transactions on herself, the spa weekends and whatnot, even if you're just looking at just the payroll transactions, it was in fact $68,000. I see. So what you're saying is even if she honestly, if mistakenly, thought that her illegal gains were not subject to reporting as income, even her lawful income exceeded what she reported. I'm not sure I would characterize it as lawful, but her kind of clear payroll transactions, the transactions that did not require any sort of looking at how she was using her credit card. I guess that is not entirely responsive to my question, which is really if she thinks what I'm doing illegally, I could get in trouble under criminal law, but surely I'm not going to get in trouble under tax law because it doesn't make any sense that people would have to report illegally. Because this is a subjective test. That's why I'm asking. I think that is an argument she could have made to the jury. In fact, I think it's notable that she testified in this case and her defense on the 2013 charges was not that, but was instead that she had consulted with a tax preparer. And so she was offering a tax preparer defense based on that. There was a special jury instruction that was given on the tax preparer defense, and the jury rejected that in this case. And so these are proper jury questions in terms of a defendant's mens rea. And so these are the sorts of questions where we do have to defer to the fact-finders findings. I think it's notable that also the district court very much reached the same conclusion and characterized the defendant's defense as essentially the dog ate my homework. And for these purposes, there's no dispute that the jury got the right instruction on how it was supposed to think through the mens rea issue. The question is whether they had sufficient evidence before them to reach the conclusion that they did. And she challenges the voluntariness of her statements with respect to the agents going over to her home. But then she lets them in. She kind of goes about her routine at home, answers a few questions, and then eventually cuts them off. At the time that she's cutting them off, it seems to be questioning more zoned in on her, more investigatory as to her. So was there any duty for the agents at that time to then at least inform her, you know, you have a right to counsel at this point? Well, so the Miranda question is going to be whether, in terms of whether she is in custody, is whether a reasonable person would have felt free to terminate the interview at that point, which is exactly what she does. And so the fact that she is herself terminating the interview at that point is awfully strong, an awfully strong indication that she was not in custody. Also, just going through this court's Cooper factors, all of them strongly point against custody. Maybe most importantly, the district court credited the agent's testimony that when they came in, they told her that the interview was voluntary and the defendant could end it at any time. So they gave that warning at the outset to her. You would take the position that Miranda deals with custody, not with the types of questions that might go to your criminality. Correct. Well, so Miranda requires both. Miranda requires both the interrogation by the agents and the custody. And so the interrogation we are not fighting on, we're not disputing that there was evidence of interrogation in this case. We're just saying that she wasn't in custody and therefore Miranda didn't kick in. Yes. I just have one super quick question. Sure. On the computer search and the denial of suppression, you briefed four different, I think, grounds, no expectation of privacy, best of consented, there was a warrant based on probable cause, officers relied on it in good faith. Yes. In the, the district court thought that the reasonable expectation of privacy in the computers that that breaks new ground in our circuit. Do you think that's right? I mean, I guess I'm asking more broadly selecting between all the grounds you offer, which is the one that we should rely on in your view? Yes. So I think the good faith is the easiest ground in this case. There's as we go through, there's no basis for questioning the probable cause finding, but certainly there's no basis once the officers, once the agents in this case did secure a warrant, went to the magistrate, got approval for what they're doing. There's no basis for second guessing that given that the Leon good faith standard, which protects the warrant from suppression after that. We do think that's the cleanest ground in this case. One other note, there's a note in our brief about a pending appeal as to the contractual dispute between the two parties pending before this court, this court did recently affirm and therefore that's been settled against Scott. The Vesta in the Vesta. Yes, exactly. And that goes to the consent issue. Yes. If there are no further questions, we've asked this court to affirm. Thank you. Council. The Berman will give you two minutes for rebuttal. Thank you. Let me briefly address a couple of the points that council made regarding the issue that I focused on the wire communications. Assuming for the sake of argument that the cover letter is deemed to be properly admitted and that the confrontation clause issue is waived by its admission, I think it's important to note that the letter itself doesn't really prove very much because it refers to, and this is the appendix 36. So two records pertaining to the physical locations of the ATMs and the severs that process the transactions. Well, this wasn't an ATM transaction in the first place. It was a paper withdrawal, and I think that the court should give, if it chooses to consider the cover letter, should choose to give that very little weight in light of the mistake that appears in Wells Fargo's own letter. Second is When you say it was a paper withdrawal, you mean going into the bank branch? Right. I think I gave the appendix sites earlier. 2583, 2587, and 2590 are the paper withdrawal slips. Ms. Scott did things the old-fashioned way here. Second is council's comment concerning the colloquy with special agent Reese at appendix 1148 where he characterized it as ambiguous. It seems to me that's a significant concession. I mean, if the agent's evidence is ambiguous, I would submit that, per se, that that does not constitute proof beyond a reasonable doubt. And with that, let me just close. I kind of have a big picture thought, which is, obviously, we're in a court of limited jurisdiction. It doesn't matter what court you're in. In Maryland, where I spent most of my career, or South Carolina, or D.C., AUSAs are taught from day one. You have to prove the jurisdictional elements. That's what I was taught. That's what I taught. The government doesn't call the right witnesses. That's their problem. If they ask the wrong questions, that's their problem. If the record is confusing, that's their problem. If the government doesn't meet its burden, she shouldn't be found guilty beyond a reasonable doubt, and the court should not affirm a conviction on those three wire fraud counts. And there is some practical significance here. If I could have just a few seconds to wrap up. There's a two-part forfeiture in this case. And there's tax forfeiture, and there's a wire fraud forfeiture. And what remains outstanding from counts one through three is $153,434.04 in wire fraud forfeiture. If the government didn't prove wire fraud beyond a reasonable doubt as to all elements, she shouldn't have to pay that forfeiture and she shouldn't have to pay the special assessments. She's pretty much done with her sentence. If the court affirms on the other accounts, it's not going to make any difference on her sentence. But she shouldn't have to pay that forfeiture and restitution if she's not guilty of those crimes. Thank you. Thank you, counsel. Thank you to both counsel. We'll take this case under submission. Mr. Berman, you are appointed by the court to represent the appellant in this matter, and the court thanks you for your assistance. Thank you, Your Honor.
judges: Srinivasan; Pillard; Childs